UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL COLLINS,

        Plaintiff,

    v.

THE BOEING COMPANY,

        Defendant.

CASE NO. C06-1843RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant's motion for summary judgment on all claims. Dkt. # 15. The Court has fully considered the parties' memoranda and exhibits, and deems oral argument unnecessary. For the reasons set forth below, the Court now GRANTS defendant's summary judgment motion and dismisses the action.

## BACKGROUND

Plaintiff Paul Collins was employed by defendant Boeing Company as a journeyman plumber. He was hired in 1987 in an entry-level position, and was soon promoted to the position of Plumber Maintenance B. In 1989, he was promoted to Plumber Maintenance A, a position he held until he was discharged on January 12, 2005. He was represented throughout his employment by the International Association of Machinists and Aerospace Workers ("the Union"), the union which represents the majority of defendant's hourly workers. Plaintiff worked at various facilities during the course of his employment.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1

At the time of his discharge he was employed at the Auburn manufacturing facility. The plumbers there are provided with a room, the "plumbers' crib", as their base of operations for task assignments, whether routine maintenance or emergency repairs. The crib has a number of computers which the plumbers can use for the purpose of entering their time into the timekeeping system and checking e-mail for messages. For the last year prior to his discharge, plaintiff worked a late shift, from 6:00 p.m. to 2:30 a.m. His supervisor at that time was Jon Baker.[1]

Plaintiff states that he and his wife decided to divorce in January, 2004, and he became very depressed. By summer of 2004, he began missing work due to his depression and consequent lack of sleep. He exhausted his vacation and sick leave, and in September of 2004 applied for leave under the Family Medical Leave Act ("FMLA leave"). Plaintiff provided the required documentation of his depression from his therapist, a psychologist, and his request was approved on September 23, 2004. Plaintiff states that he began using intermittent FMLA leave at that time, "once or twice a week". Declaration of Paul Collins, Dkt. # 25, ¶¶ 6-9.

Defendant states that plaintiff's disciplinary problems began on August 23, 2004, when he left a scheduled offsite "backflow" class early and without authorization, and failed to attend the following day. Plaintiff was sanctioned with a one-day suspension for both failing to attend class on August 24 and for misreporting his time on August 23 as eight hours rather than four. Declaration of Tom Affolter, Exhibit A (Deposition of Paul Collins), p. 59-60. Plaintiff served his one-day suspension on September 28, 2004.

Two weeks later (and three weeks after his FMLA leave request was approved), on October 13, 2004, Boeing Security received a report from Karl Goeres, a second-level manager, of computer misuse in the plumber's crib, stating that the main abuser was plaintiff. A security investigator, John Selzer, was assigned to investigate the alleged misuse. Using tracking software, he monitored plaintiff's computer use for approximately a week, October 28 to November 5, 2004. Declaration of John Selzer, Dkt. # 17, ¶¶ 2-5. Analyzing the tracking results, Mr. Selzer determined that between those dates plaintiff spent between three and five hours per shift on non-work related activity on the computer, mainly playing

---

[1] Plaintiff refers to him as Jack Baker. Declaration of Paul Collins, Dkt. # 25, ¶¶ 7, 8.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 2

Solitaire but also "surfing" and visiting an "American Singles" chat room. On November 2, 2004, plaintiff used the computer in this way for over nine hours. *Id*., Exhibit A.

Mr. Selzer met with plaintiff in the presence of a union representative on December 6, 2004 to discuss the results of the investigation. Plaintiff gave the following written statement:

> I was hired by The Boeing Company on May 22, 1987. My job title is Maintenance Plumber in organization Workplace Services.
>
> When I have jobs to do I get my jobs done. I do my jobs but when I don't have work I sit on the computer some. I've never had any complaints from my boss that I don't get my work done, everything he's asked me to get done I've got done for him. I think I may spend 1 ½ hour [sic] a night on the computer on average around my lunch and break periods. Maybe near the end of shift too.
>
> I'm usually here about 1 hour or 1 hour and 15 minutes before work and will sit and play solitaire on the computer during that time as well.
>
> I'll work maybe one weekend a month. If the time is higher on weekends it's usually because it's really quiet here on weekends with few people and I don't get many calls. I do my rounds and check everything out but there's not much happening.
>
> On October 16th I filed for family leave and was authorized. I went to a Therapist, Roxanne Brown, and was diagnosed with stress. My wife filed for divorce in February, after I asked for it, but I've been getting more stressed over time and was missing work because of the stress, court dates, and seeing a therapist, as well as financial hardships. I'm also losing my business in the divorce. My wife ran up the credit cards, creating financial hardships. I was shutting down and would sit and stare at the computer playing solitaire to clear my mind.

*Id*.

The record demonstrates that plaintiff had previously been given a corrective action memo for playing games on the computer during work time. The memo, dated July 27, 1999, advised plaintiff that failure to discontinue the offending behavior would result in disciplinary action, up to and including termination. Declaration of Thomas Affolter, Exhibit 12 to Plaintiff's Deposition.

After the investigation, Mr. Selzer's report was forwarded to defendant's Employee Corrective Action Review Board ("ECARB" or "Board"). The Board, consisting of approximately nine members from the Human Resources Department, was created in part to maintain company-wide uniformity in disciplinary procedures. Declaration of Diane Hayman, Dkt. # 18, ¶ 3. After reviewing the reports generated by Mr. Selzer and others regarding plaintiff's misuse of computers, and the applicable disciplinary guidelines, ECARB determined that plaintiff should be terminated. *Id*., ¶ 8.

On January 12, 2005, Diane Hayman and Jon Baker, plaintiff's immediate supervisor, met with

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 3

him and informed him of his discharge. *Id.*, ¶ 9. They presented him with a corrective action memo, stating that he was being discharged for excessive computer use (more than 23 hours between September 28 and November 5, 2004), and for signing time records indicating he had worked assigned jobs when he was actually playing computer games. Plaintiff signed the corrective action memo, adding "[I] believe I'm being singled out and this action is not fair." *Id.*, Exhibit D.

Plaintiff contacted his union representative and asked for an investigation of his discharge. The union representative investigated the matter and determined there was not sufficient merit to pursue an action on plaintiff's behalf. In a May 19, 2005 e-mail, Boeing Employee Relations specialist Yvette Morgan explained to union representative Tom Wroblewski that Boeing policy BPI-2616 provided general guidelines on discipline for computer misuse, and that pursuant to company interpretation of this guideline, twenty or more hours of computer misuse in any thirty-day period was grounds for discharge. Declaration of Yvette Morgan, Dkt. # 19, ¶ 5 and Exhibit A. On June 1, 2005, the union advised plaintiff that it would not pursue a grievance regarding plaintiff's discharge. Declaration of Affolter, Exhibit 8 to the Deposition of Paul Collins.

After learning of the Union's decision to not pursue a grievance on his behalf, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on account of his disability. *Id.*, Exhibit 9. Plaintiff stated in that Charge that he had been "diagnosed with a disability" in October 2004, but he did not specify the disability. *Id.* Six months later, the EEOC sent plaintiff a Dismissal and Notice of Rights, advising him that it had been unable to establish any violation of the relevant statutes, and was closing the investigation. *Id.*, Exhibit 10. At his deposition, plaintiff attributed the dismissal to his own failure to produce documents requested by the EEOC in time. Declaration of Affolter, Deposition of Paul Collins, p. 86.

Following dismissal of his EEOC complaint, plaintiff filed this lawsuit in King County Superior Court, alleging claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Washington Law Against Discrimination ("WLAD"), RCW 49.60  Defendant removed the action to this Court on the basis of the federal claim, and now has moved for summary judgment on both claims. The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4

DISCUSSION

I. <u>WLAD Claim.</u>

In his claim under the Washington Law Against Discrimination, RCW 49.60, plaintiff alleges that his disability and/or his FMLA leave request substantially motivated Boeing's discriminatory and retaliatory actions, in violation of the WLAD. Complaint, ¶ 4.2. Defendant has moved for summary judgment on this claim on the basis that plaintiff has not established a prima facie case of disability discrimination.

Under the WLAD, courts follow the traditional burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Coleman v. Quaker Oats Co.*, 232 F. 3d 1271, 1281 (9th Cir. 2000); *Domingo v. BECU,* 98 P. 3d 1222, 1225 (2004). In responding to a motion for summary judgment, the plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory motive more likely than not motivated the defendant's decision to terminate him, or alternatively may establish a prima facie case under framework set out in *McDonnell Douglas Corp. Dominguez-Curry v. Nevada Transportation Department*, 424 F. 3d 1027, 1037 (9th Cir. 2005). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F. 3d 1217, 1220 (9th Cir. 1998). In the absence of direct evidence, as is the case here, discriminatory animus is presumed if the plaintiff can demonstrate that (1) he was within a protected group (here, disabled); (2) he was doing satisfactory work; (3) he was discharged; and, (4) the discharge occurred under circumstances giving rise to an inference of unlawful discrimination." *Nesbit v. Pepsico, Inc.,* 994 F. 2d 703, 704-5 (9th Cir. 1993) (per curium); *Hunt*, 150 F. 3d at 1220.

The degree of proof necessary to establish a prima facie case is minimal. *Wallis v. J.R. Simplot Co.*, 26 F. 3d 885, 888-889 (9th Cir. 1994); citing *Rose v. Wells Fargo & Co.*, 902 F. 2d at 1420. The mere existence of a prima facie case, however, does not preclude summary judgment. The prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. *Dominguez-Curry*, 424 F. 3d at 1037, citing *Lyons v. England*, 307 F. 3d 1092, 1112 (9th Cir. 2002). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id*. If the employer carries this burden, the presumption of unlawful discrimination "simply drops out of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 5

the picture." *Id.*, quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993). The employee must then produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered explanation is merely a pretext for discrimination. *Id.*, citing *Coleman v. Quaker Oats Co.*, 232 F. 3d at 1282.

Defendant asserts that plaintiff has not pointed to any evidence that would give rise to the inference that either his alleged disability (depression) or his request for FMLA leave was the cause of his discharge. The record clearly indicates that he was discharged for excessive use of computers, in violation of company policy, and for misreporting his hours of work.

Plaintiff contends that the close proximity in time between his first use of FMLA leave and the institution of the investigation of his computer use raises the inference that the investigation was retaliatory. However, the record demonstrates that there is no causal connection between the two events. The investigation of computer misuse was initiated after a second-level manager, Karl Goeres, reported that there was a problem in the plumber's "crib". Mr. Goeres testified at his deposition that he did not know anything of plaintiff's illness or disability, and did not recall discussing the matter with Jon Baker, plaintiff's direct supervisor. Deposition of Karl Goeres, Dkt. # 25, pp. 28-29. Jon Baker testified at deposition that he was aware of plaintiff's FMLA leave request, and reduced his workload accordingly, from thirty-five or forty hours per week to thirty-two. Deposition of Jon Baker, Dkt. # 25, pp. 18, 32. However, he did not learn of the investigation of computer misuse until December 6, 2005, well after it was completed. *Id.*, pp. 34-36.

The mere proximity in time between the FMLA leave request and the investigation of computer misuse is wholly insufficient to demonstrate a retaliatory motive. *Rotter v. Conam Management corp.*, 393 F. Supp. 2d 1077, 1085 (W.D.Wash. 2005); *citing Anica v. Wal-Mart Stores*, 120 Wash. App. 481, 489 (2004). Simply stated, "coincidence is not proof of causation." *Id*.

Plaintiff has pointed to no evidence in the record that would demonstrate a causal connection between his request for FMLA leave, which was known to Mr. Baker, and the investigation initiated by Mr. Goeres, who had no knowledge of plaintiff's disability or the FMLA request. His argument that Mr. Baker and Mr. Goeres must have communicated about this matter is based on pure speculation. For

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6

example, plaintiff contends that "one can infer" from the fact that the two managers communicated about plaintiff's failure to attend the August 23, 2004 class, and resulting disciplinary sanction, that they must have communicated about the computer misuse as well. Plaintiff's Opposition, p. 16, n. 5. Such inference would be mere speculation, and cannot overcome the deposition testimony of both managers. Plaintiff also points to testimony regarding weekly managers' meetings, implying that Mr. Baker and Mr. Goeres must have discussed the investigation of computer misuse at that time. *Id.*, p. 16. However, this argument ignores Mr. Baker's statement that they did not discuss disciplinary actions at those meetings; rather, they discussed hiring matters, performance charts, safety issues, and other matters. Deposition of Jon Baker, Dkt. # 25, p. 9.

As plaintiff has failed to point to evidence demonstrating that his discharge occurred under circumstances giving rise to an inference of unlawful discrimination, he has failed to make a prima facie case of discrimination under the WLAD. *Nesbit v. Pepsico, Inc.,* 994 F. 2d 703, 704-5 (9th Cir. 1993) (per curium); *Hunt*, 150 F. 3d at 1220. Even if the Court were to accept plaintiff's argument regarding the proximity in time as establishing the fourth element of his prima facie case, defendant has clearly articulated a legitimate, non-discriminatory reason for his termination: plaintiff violated the company policy on computer use, and falsely reported the hours spent on the computer as time actually worked. Declaration of Diane Hayman, Dkt. # 18, Exhibit D.

Plaintiff makes conclusory allegations regarding Mr. Baker's "false statements", arguing that these are "circumstantial evidence of pretext". Plaintiff's Opposition, p. 16. However, as plaintiff has failed to make a prima facie case of discrimination, the question of pretext does not arise. *Dominguez-Curry v. Nevada Transportation Department*, 424 F. 3d at 1037. Moreover, plaintiff has not demonstrated any actual false statements made by Mr. Baker. Plaintiff asserts there are inconsistencies between Mr. Baker's statement that he was not aware, prior to plaintiff's termination, that plaintiff was depressed, and the following testimony by Diane Hayman:

> Q: Was there any discussion between you and Mr. Goeres and Mr. Baker about Mr. Collins being depressed and upset at the time that he was allegedly misusing the company computers?
>
> A: We did talk about it because it was in the security report, but because of the type of rule infraction it was, it was a separate issue from what we were looking at as far as the corrective action for the infraction.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7

Deposition of Diane Hayman, Dkt. # 25, pp. 18-19.  Contrary to plaintiff's assertion, Ms. Hayman's testimony does not demonstrate that Mr. Baker testified falsely.  His testimony on this point was as follows:

> Q: Okay.  Before his termination were you ever aware that Mr. Collins was depressed?
>
> A: No.
>
> Q: Okay.  Did Mr. Collins ever—he never told you he was depressed?
>
> A: I—I know we had a conversation about his—he was getting a divorce.  Everybody knew that through—that he was going through a divorce.
>
> Q: And what did he tell you about that?
>
> A: Me specifically or what I heard in discussions with others?
>
> Q: Either.
>
> A: Either?  That it was hard.  It was a hard—that he have—was having trouble.
>
> Q: Okay.
>
> A: It was a hard divorce.
>
> Q: Do you have any idea what his FMLA was based on—
>
> A: No.
>
> Q: —what medical condition he had?
>
> A: No, not at all.
>
> Q: Okay.  So he never told you he was out on FMLA for any particular reason.
>
> A: Not that I recall.
>
> Q: Okay.
>
> A: And I would never ask that question.
>
> Q: I understand that.

Deposition of Jon Baker, Dkt. # 25, pp. 67-68.  Mr. Baker also testified that he gave plaintiff the phone number for the Employee Assistance Program because he seemed so troubled.  *Id*., p. 69.  Viewed in its entirety, Mr. Baker's testimony is consistent with Ms. Hayman's statement that plaintiff's depression was

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8

discussed among the managers at the time of the termination proceedings.[2]  Further, Mr. Baker's testimony is internally consistent and straightforward; he was neither evasive nor contradictory in his statements.  The Court finds no basis for deeming any of his testimony "false" or evidence of pretext.

Finally, plaintiff contends that his misuse of the computers was conduct that resulted from his disability, and therefore could not lawfully serve as a basis for termination.  Plaintiff cites a recent Ninth Circuit Court of Appeals decision, in which the court found that a plaintiff alleging disability discrimination under the WLAD was entitled to a jury instruction stating that "conduct resulting from a disability is part of the disability and not a separate basis for termination."  *Gambini v. Total Renal Care, Inc.*, 486 F. 3d 1087, 1093 (9th Cir. 2007).  This instruction is based on well-established Washington law.  *Riehl v. Foodmaker, Inc.,* 152 Wash. 2d 138 (2004) (*en banc*).

The plaintiff in *Gambini,* who suffered from bipolar disorder, was terminated for her "short fuse" and emotional outbursts.   She presented medical evidence to her employer that her angry outbursts were caused by her bipolar disorder, and asked for reconsideration, but the employer refused.  She then sought relief in court under the WLAD, and the jury rendered a verdict in favor of the employer.  The appellate court reversed and remanded for a new trial on the basis of the rule set forth above.  *Gambini*, 4876 F. 3d at 1092.  This case is easily distinguished from plaintiff's situation in that he has presented no medical evidence attributing his excessive computer use on company time to his condition of depression.  Further, his own declaration states that he played solitaire constantly "only because I had not [sic] work to do".  Declaration of Paul Collins, Dkt. # 25, ¶ 30.  Plaintiff in his declaration repeatedly states that he did not have sufficient plumbing work to keep him busy; that was his reason for playing solitaire on the computer.  *Id*., ¶¶16, 18, 21, 24.  He did not anywhere in that declaration attribute his excessive computer use to his depression; instead he described his activity as common to all the plumbers in the crib—in other words, it was normal behavior.  *Id*.  Thus, his own declaration belies his eleventh-hour invocation of the rule set forth in *Gambini*.  The Court finds no basis for application of that rule here.

---

[2]The Court notes that although plaintiff constantly refers to his diagnosis of depression as the basis for his FMLA leave request and a condition of which the managers knew or should have been aware, his written response to the security investigation (set forth above in its entirety) identifies stress, not depression, as the excuse for his computer misuse.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 9

II. <u>FMLA Claim</u>.

The FMLA provides a cause of action for an employee whose employer has violated the statute by denying or interfering with the employee's attempt to exercise "any right provided under this subchapter." 29 U.S.C. §§ 2615(a)(1). Plaintiff's complaint alleges that his termination by defendant "was in retaliation for his FMLA claim and violates 29 U.S.C. § 2601 *et seq*. and 29 U.S.C. § 2615(a)(2). Complaint, ¶ 4.3. In his response to the summary judgment motion, he clarifies that "his claims more properly lie under 29 U.S.C. § 2615(1) [sic]."[3] Plaintiff's Opposition, p. 14, n. 4. He argues that "simply 'visiting' negative consequences on an employee who takes FMLA-protected leave gives rise to the claim for interference with the exercise of FMLA rights." *Id*., *citing Bachelder v. American West Airlines*, 259 F. 3d 1112, 1122 (2001). However, as shown above, plaintiff has produced no evidence whatsoever that his termination was in any way related to his FMLA leave; the mere fact that the security investigation was begun three weeks after approval of his FMLA leave request is not even circumstantial evidence of such connection. He has not raised the inference that his termination was a negative consequence "visited' upon him as a result of his taking intermittent FMLA leave. As plaintiff has produced no evidence in support of this claim, the Court finds it without merit.

## CONCLUSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

---

[3] The Court assumes plaintiff means to cite 29 U.S.C. § 2615(a)(1).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 10

248 (1986). It is not the Court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id*. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id*. at 255.

As set forth above, the undisputed facts in the record demonstrate that defendant is entitled to judgment as a matter of law on the FMLA and WLAD claims. Plaintiff has not met his burden of demonstrating that any genuine issue of material fact remains for trial. Accordingly, defendant's motion for summary judgment is GRANTED, and these claims are DISMISSED with prejudice. The Clerk shall enter judgment in favor of defendant as set forth herein.

DATED this 7 day of April, 2008.

/s/ Ricardo S. Martinez

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 11